UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Joseph M. McKnight, Jr.,** | ) | Civil Action No.:_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Joseph M. McKnight, Jr., for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Joseph M. McKnight, Jr., is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to block, delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, and failed to investigate Plaintiff's disputes. Defendant repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## **FACTUAL ALLEGATIONS**

15.  In mid-August 2022, Plaintiff received a collection call from USAA concerning an alleged credit card debt he owed. Plaintiff informed the caller he did not, nor had he ever had a credit card issued by USAA. Troubled by receiving a collection call, Plaintiff obtained copies of his credit reports. Plaintiff's credit reports contained fraudulent accounts for loans, credit cards, and utility bills that had been opened in his name without his consent or knowledge.

16.  On August 29, 2022, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

17.  In September 2022, Plaintiff learned that his estranged wife, Mary Lee McKnight, had opened numerous accounts and loans in his name without his permission.

18.  On September 7, 2022, Plaintiff sent a written dispute letter to Equifax via priority mail, disputing all of the fraudulent accounts appearing on his Equifax credit report. Plaintiff never received a response from Equifax to his letter.

19.  On September 13, 2022, Plaintiff filed an Identity Theft Intake Form with the South Carolina Department of Consumer Affairs.

20.  On September 14, 2022, Plaintiff filed a police report with the Florence County Sheriff's Office concerning the fraudulent accounts appearing on his credit reports.

21.  In mid-September 2022, Plaintiff moved to Florence, South Carolina, for a job opportunity in Darlington, South Carolina.

22.  Thereafter, Plaintiff required surgery which kept him out of work on disability from October 12, 2022, through April 1, 2023.

23. Once Plaintiff was well enough to go back to work, he again began working to correct all of the fraudulent accounts appearing on his Equifax credit report.

24. On or about November 15, 2023, Plaintiff obtained a new copy of his Equifax credit report, which continued to be riddled with incorrect, inaccurate, and fraudulent information.

25. On or about December 5, 2023, Plaintiff sent another written dispute letter to Equifax wherein he again specifically informed Equifax that he had been the victim of identity theft and fraud, and that he had learned that his estranged wife had opened numerous accounts and loans in his name without his permission. Plaintiff specifically set out and disputed the reporting of sixteen (16) accounts as fraudulently opened in his name without his knowledge: American Express; USAA Savings Bank; JPMCB Card Services; Fingerhut/WebBank; SYNCB/Walmart; WebBank/Gettington; Discover Bank; Regional Finance, Acct xxxxx 4401; Regional Finance, Acct xxxxx 9754; Regional Finance, Acct xxxxx4543; Regional Finance, Acct xxxxx0534; Regional Finance, Acct xxxxx6576; Regional Finance, Acct xxxxx2601; Regional Finance, Acct xxxxx8607; National Credit Adjusters, L.L.C., and CNH Industrial Capital America LLC. Plaintiff disputed two addresses which were reporting on his credit report at which he never lived, and Plaintiff informed Defendant that the birth date reporting was incorrect and provided Defendant with his correct birth date. Plaintiff asked Defendant to add a fraud alert to his credit report and requested that all of the fraudulent accounts be deleted. Finally, Plaintiff provided Defendant his full social security number and address.

26. Defendant received Plaintiff's dispute on December 8, 2023.

27. On or about December 11, 2023, Defendant sent Plaintiff a letter requesting

5

information verifying Plaintiff's identity and address.

28.    On or about December 14, 2023, Defendant forwarded Plaintiff a letter stating it had added a fraud alert to Plaintiff's Equifax credit file.

29.    On or about January 5, 2024, Defendant sent Plaintiff its alleged Investigation Results wherein Defendant informed Plaintiff that the disputed accounts: American Express; USAA Savings Bank; JPMCB Card Services; Fingerhut/WebBank; SYNCB/Walmart; WebBank/Gettington; Discover Bank; Regional Finance, Acct xxxxx 4401; Regional Finance, Acct xxxxx 9754; Regional Finance, Acct xxxxx4543; Regional Finance, Acct xxxxx0534; Regional Finance, Acct xxxxx6576; Regional Finance, Acct xxxxx2601; National Credit Adjusters, L.L.C., and CNH Industrial Capital America LLC, had been deleted from Plaintiff's credit file. Defendant also deleted the disputed addresses. However, Defendant requested a copy of Plaintiff's driver's license or birth certificate in order to update his date of birth.

30.    On or about January 21, 2024, Defendant sent Plaintiff a letter informing him that Defendant had reinserted the previously deleted WebBank/Gettington account on his credit file because the company that furnished the account information certified the account belonged to Plaintiff and requested it be reinserted on Plaintiff's credit file.

31.    On or about January 26, 2024, Plaintiff mailed a copy of his driver's license and W-2 to Defendant via certified mail, return receipt requested. Defendant received this information on January 29, 2024.

32.    On or about January 31, 2024, despite having already received Plaintiff's driver's license and W-2, Defendant forwarded another letter to Plaintiff requesting identifying

6

information to verify his identity and address.

33. On or about March 22, 2024, Plaintiff sent a third written dispute to Equifax wherein Plaintiff again informed Equifax that he had been the victim of identity theft and fraud, and that he had learned that his estranged wife had opened numerous accounts and loans in his name without his permission. As Defendant had already reinserted one of the fraudulent accounts back onto Plaintiff's credit file, Plaintiff specifically disputed the reporting of all sixteen (16) fraudulent accounts opened in his name without his knowledge. Plaintiff also again disputed two addresses which were reporting on his credit report at which he never lived, and Plaintiff informed Defendant that the birth date reporting was incorrect and provided Defendant with his correct birth date. Plaintiff asked Defendant to verify the fraud alert was added to his credit report and requested that all of the fraudulent accounts be deleted.

34. Defendant received Plaintiff's third dispute on March 25, 2024.

35. Defendant did not investigate any of Plaintiff's disputes but simply forwarded their standard letter again requesting proof of identification so as to avoid their responsibilities under the FCRA.

36. On or about March 28, 2024, Defendant forwarded Plaintiff a letter wherein Defendant stated they were unable to locate a credit file in their database with the identification information provided them and requested Plaintiff send them additional information verifying his identity and address.

37. On or about April 25, 2024, Plaintiff sent a fourth written dispute letter to Equifax. In this letter, Plaintiff disputed the reporting of the National Credit Adjusters, L.L.C., and

7

Sheffield Financial accounts as fraudulently opened accounts and requested Defendant remove them from his credit file. Plaintiff also provided Defendant another copy of his driver's license so that Defendant would correct the date of birth reporting on his credit file.

38. Defendant received this fourth dispute on May 1, 2024.

39. On or about May 4, 2024, Defendant sent Plaintiff a letter stating they were unable to locate a credit file in their database with the identifying information Plaintiff provided. Defendant again requested additional information verifying Plaintiff's identity and address.

40. Defendant did not investigate any of Plaintiff's disputes in his fourth dispute letter, but simply forwarded their standard letter requesting proof of identification so as to avoid their responsibilities under the FCRA. At the time Defendant sent this letter, Plaintiff had already provided Defendant with proof of his identity, address, and date of birth on multiple occasions.

41. On or about May 22, 2024, in response to Defendant's May 4, 2024 letter, Plaintiff mailed Defendant another copy of his driver's license and social security card, together with a copy his fourth dispute letter, via certified mail, return receipt requested. Defendant received this information on May 27, 2024.

42. Defendant failed to make a reasonable investigation into Plaintiff's disputes.

43. Defendant did not undertake to perform any investigation of its own regarding Plaintiff's disputes.

44. To date, Defendant continues to report inaccurate information regarding the Plaintiff. Either Defendant reports that it has no file containing Plaintiff's identifying information or

it reports inaccurate, fraudulent accounts as belonging to Plaintiff.

45. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

46. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

47. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

48.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 47 hereinbefore as if fully set forth herein.

49.     Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

50.     Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.  Defendant also failed to correct inaccurate information on Plaintiff's credit file.

51.     As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52.     In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which,

but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53.    Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

54.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 53 hereinbefore as if fully set forth herein.

55.    Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

56.    Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file. Defendant also failed to correct inaccurate information on Plaintiff's credit file.

57.    Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

58.    As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded him from seeking further

credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59.     In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

60.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

61.     Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.     For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501

(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

          */s/ Penny Hays Cauley*
          Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169